UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
BLUE RIO LLC and PETER FINE,  :
:
           Plaintiffs,  :  **OPINION AND ORDER**
:
v.  :  17 CV 2015 (VB)
:
CITY OF MOUNT VERNON MAYOR  :
RICHARD THOMAS, in his individual and  :
official capacities, MICHAEL GIANATASIO,  :
and the CITY OF MOUNT VERNON,  :
:
           Defendants.  :
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiffs Blue Rio LLC ("Blue Rio") and Peter Fine bring this action under 42 U.S.C. § 1983, alleging defendants retaliated against them for exercising their First Amendment rights to free speech and expressive association. Plaintiffs also bring a Section 1983 conspiracy claim and related state law claims.

    Before the Court is defendants' motion to dismiss the complaint under Rule 12(b)(6). (Doc. #13).

    For the reasons set forth below, defendants' motion is GRANTED IN PART and DENIED IN PART.

    The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

    In deciding the pending motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in plaintiffs' favor, as set forth below.

    Blue Rio is a real estate development company that is building a mixed residential and

1

retail development at 203 Gramatan Avenue (the "203 project") in downtown Mount Vernon, New York.  Peter Fine is a principal of Blue Rio.  Defendant Richard Thomas is the mayor of Mount Vernon, having taken office in January 2016.  Defendant Michael Gianatasio is a consultant hired by the City of Mount Vernon and is also the president and CEO of Universal Engineering Services, P.C.  Plaintiffs allege Gianatasio is a relative of Mount Vernon Honorary Deputy Police Commissioner Joseph Spiezio, who is "a known political supporter of Thomas." (Compl. ¶ 25).

According to the complaint, on March 18, 2016, at a private lunch, Thomas introduced Fine to an unnamed consultant (the "consultant"), whom Thomas described as "his friend and advisor."  (Compl. ¶ 21).  Thomas told Fine "if he needed to reach [Thomas], he should do so through the Consultant."  (Id.)

In the summer of 2016, the consultant allegedly asked Fine to retain him; Fine declined.

According to the complaint, on October 18, 2016, Gianatasio visited the 203 project worksite unannounced and accompanied by a Mount Vernon Department of Buildings ("DOB") inspector who had with him a stop work order, although it was not issued at that time.  Gianatasio refused to give his name to workers at the worksite and was not allowed to enter.  Later that day, Gianatasio returned to the worksite with another DOB official, who threatened to issue the stop work order unless Gianatasio was admitted.  Gianatasio gave his name and was admitted to the worksite with the DOB official.  Following these first visits, Gianatasio returned several times to the worksite and often brought with him city officials, including from the Department of Public Works ("DPW"), DOB, the Parking Bureau, and the police and fire departments.

On December 3, 2016, a DPW official allegedly came to the 203 project and announced

the DPW would begin enforcing a previously-ignored section of the Mount Vernon Building Code that requires a special permit for work on Saturdays.

Plaintiffs had an ongoing dispute with the owner of a building adjacent to the 203 project, Frank DeLeonardis. Mr. DeLeonardis allegedly prevented plaintiffs from accessing his roof, which had previously been used by the 203 project for construction staging. According to the complaint, on December 30, 2016, the acting commissioner of DOB, Curtis Woods, issued a stop work order for the 203 project at the direction of Mayor Thomas. On January 3, 2017, Mr. DeLeonardis contacted Blue Rio stating that in exchange for a $20,000 licensing fee and $20,000 for repairs, Mr. DeLeonardis would arrange to have the stop work order lifted. Commissioner Woods confirmed to plaintiffs that the Mayor's office asked Commissioner Woods to assist Mr. DeLeonardis in the dispute with Blue Rio and both the Mayor's office and Gianatasio "were involved in the decision to issue the order." (Compl. ¶ 37). On January 4, the stop work order was modified to allow construction inside the building. On January 13, Gianatasio allegedly told Blue Rio the DOB would issue another stop work order if Blue Rio did not enter into a license agreement with Mr. DeLeonardis. On February 3, Blue Rio commenced an action in state court to obtain a license to access the roof of the building owned by Mr. DeLeonardis. Plaintiffs claim that on February 7, Commissioner Woods told plaintiffs that all exterior work on the 203 project would cease until plaintiffs reached an agreement with Mr. DeLeonardis.

Plaintiffs further allege the DOB has delayed in issuing already approved permits for the 203 project and city officials have ignored requests for meetings with plaintiffs.

On February 17, 2017, a DOB official allegedly directed plaintiffs to install a covered walkway (a "sidewalk shed"), which plaintiffs installed. On February 21, the deputy commissioner of DPW directed plaintiffs to remove the portion of the sidewalk shed that

extended beyond the 203 project property line, even though plaintiffs allege the building code requires the sidewalk shed to extend beyond the property. The deputy commissioner threatened to issue a stop work order if plaintiffs did not provide him the building code provisions that mandated the dimensions of the sidewalk shed. On February 22, the Mount Vernon Corporation Counsel told plaintiffs the sidewalk shed was erected without a permit and threatened to issue a stop work order. According to the complaint, on March 3, Gianatasio came to the worksite with DPW employees and threatened to issue a stop work order if the portion of the sidewalk shed beyond the site's property line was not removed. Gianatasio also threatened to "return to his car, [which was] parked in the front of the building, and to remain there to watch for violations." (Compl. ¶ 54).

On February 22, 2017, a reporter called Thomas and asked him to comment on statements from plaintiffs that would be in a forthcoming article in the Westchester County Business Journal about the alleged harassment at the 203 project. After receiving this call and hearing plaintiffs' comments, Thomas allegedly called a partner in the 203 project, who was also a friend of Fine, and threatened to "investigate the shit out of you guys." (Compl. ¶ 56). On March 1, at a meeting between plaintiffs' representative and Thomas, Thomas allegedly said there would be no responses on outstanding building issues "until there was an 'apology' for the statements made about the Mayor and his administration in the Westchester County Business Journal." (Compl. ¶ 57). Thomas said substantially the same thing to Fine on March 9. Later that day, inspectors from the Occupational Health and Safety Administration ("OSHA") came to the worksite and told plaintiffs that OSHA was responding to an emergency complaint from Thomas's office.

# DISCUSSION

## I. Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiffs' legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). The court may nevertheless consider a document not incorporated by reference if the complaint "'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

However, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." DiFolco v. MSNBC Cable L.L.C., 622 F.3d at 111 (quoting Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." DiFolco v. MSNBC Cable L.L.C., 622 F.3d at 111 (quoting Faulkner v. Beer, 463 F.3d at 134).

II.     Section 1983 Claims Against Gianatasio

Defendants argue plaintiffs have not plausibly alleged a Section 1983 claim against Gianatasio because he was not acting under color of state law but was merely a consultant for the City of Mount Vernon.

The Court disagrees.

A claim for relief under Section 1983 must allege facts showing each defendant acted under color of a state "statute, ordinance, regulation, custom or usage"; thus, private parties are not generally liable under the statute. See Rendell-Baker v. Kohn, 457 U.S. 830, 838–42 (1982).

A private party's actions are nevertheless attributable to the state if they meet one of three tests enunciated by the Supreme Court: (i) the "compulsion" test, when the state's coercive power has compelled an entity to act; (ii) the "public function" test, when the state has delegated a public function to the entity; or (iii) the "joint action" or "close nexus" test, when the state has provided "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies. Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 257–58 (2008) (citing Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n, 531 U.S. 288, 296 (2001)).

In analyzing whether a private party acts under color of state law for purposes of Section 1983, the Court analyzes the specific conduct of which plaintiff complains, rather than the

6

general characteristics of the party.  See Fabrikant v. French, 691 F.3d 193, 207 (2d Cir. 2012) (citing Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 51 (1999)).  The public function delegated to the private party must be one that is the exclusive or near exclusive function of the state.  Horvath v. Westport Library Ass'n, 362 F.3d 147, 151–52 (2d Cir. 2004).  One near exclusive function is the exercise of "investigatory and law enforcement powers."  Fabrikant v. French, 691 F.3d at 208.

Here, plaintiffs have adequately alleged Gianatasio acted under color of state law.  Specifically, plaintiffs allege Gianatasio repeatedly threatened the issuance of stop work orders, or otherwise directed the DOB to do so.  Gianatasio also repeatedly inspected the 203 project.  Moreover, in an October 18, 2016, inspection report prepared for the City of Mount Vernon, Gianatasio writes, "I requested that no one work on these [unprotected] areas unless they were appropriately tied off and installing [sic] safety guard rails as required by Code."  (Buss aff. Ex. H at 15).  This public document, submitted by defendants as an official agency record,[1] suggests Gianatasio was deputized to investigate, document, and enforce municipal building codes and code violations, all of which are near exclusive functions of the state.

Accordingly, plaintiffs have plausibly alleged that Gianatasio acted under color of state law and is amenable to suit under Section 1983.

III.    First Amendment Claims

Defendants argue plaintiffs have failed plausibly to allege their First Amendment rights were violated.

---

[1] Defendants ask this Court to take judicial notice of the Gianatasio inspection report because it "is a record of the Mount Vernon Department of Buildings [and] the Court can take judicial notice of agency records."  (Defs.' Reply at 8 n.2).  The Court may take judicial notice of documents referenced in the complaint and agency findings.  See Smith v. Westchester Cty., 769 F. Supp. 2d 448, 458 n.7 (S.D.N.Y. 2011).

7

The Court disagrees.

To state a First Amendment retaliation claim, a plaintiff must plausibly allege "(i) he has an interest protected by the First Amendment; (ii) defendants' actions were motivated or substantially caused by his exercise of that right; and (iii) defendants' actions effectively chilled the exercise of his First Amendment right." Kuck v. Danaher, 600 F.3d 159, 168 (2d Cir. 2010) (internal quotation marks omitted).

The Court applies this same analysis to plaintiffs' claims under the New York State Constitution for expressive association and freedom of speech. Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, 138 F. Supp. 3d 352, 445–46 (S.D.N.Y. 2015) ("[T]he corollary provisions for the First Amendment's Free Speech and Free Association Clauses in the New York Constitution, namely [Article I,] §§ 8 and 9, are interpreted consistently with the Federal Constitution and accordingly the Court resolves those claims in the same way.") (internal quotation marks omitted).

Here, plaintiffs allege two distinct violations of their First Amendment rights: (i) that their right to freedom of association was violated by defendants' retaliatory actions after plaintiffs decided not to hire the consultant; (ii) that their right to freedom of speech was violated when Mayor Thomas required an apology for statements plaintiffs made to the press before Thomas would issue the permits required for work at the 203 project to continue.

Each of these claims has been adequately pleaded.

First, defendants do not dispute that plaintiffs' right not to hire the consultant is protected under the First Amendment.

Second, plaintiffs have adequately alleged defendants' conduct "was motivated by or substantially caused by [plaintiffs'] exercise of free speech." Gagliardi v. Vill. of Pawling, 18

8

F.3d 188, 194 (2d Cir. 1994). A defendant's retaliatory motive can be established by circumstantial evidence. Hartman v. Moore, 547 U.S. 250, 261 (2006). "While a bald and uncorroborated allegation of retaliation might prove inadequate to withstand a motion to dismiss, it is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." Gagliardi v. Vill. of Pawling, 18 F.3d at 195.

Finally, "[a] plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009). There is no bright-line rule in this Circuit for what constitutes "close in time"; some courts have found as little as three months too long to infer retaliatory motive, but others have found gaps as long as eight months are close enough in time to infer retaliatory motive. Gorman-Bakos v. Cornell Co-op Extension of Schenectady County, 252 F.3d 545 (2d Cir. 2001) (collecting cases).

Here, although it is a close call, plaintiffs have met their burden of pleading retaliatory motive. Viewed in the light most favorable to defendants, the timing of the alleged harassment, coupled with other statements, satisfies this burden. The consultant allegedly asked Fine to hire him in the summer of 2016, which Fine declined to do, and the alleged harassment began in October 2016, at most four months later. Plaintiffs also allege that following their decision not to hire the consultant, "[m]ultiple City employees told Plaintiffs that [Thomas] instructed them to shut down work at 203 Project." (Compl. ¶ 23). When Gianatasio first visited the site in October 2016, the DOB inspector who accompanied Gianatasio allegedly "told Plaintiffs' representatives that [Thomas] had instructed him to bring Gianatasio to the 203 Premises." (Compl. ¶ 26).

Plaintiffs must also plausibly plead an injury. Typically, "private citizens claiming

9

retaliation for their criticism of public officials have been required to show that they suffered an 'actual chill' in their speech as a result." Zherka v. Amicone, 634 F.3d 642, 645 (2d Cir. 2011). However, in contexts where chilling is not alleged, an allegation of an independent concrete injury is sufficient to fulfill the injury requirement. Id. at 646; Puckett v. City of Glen Cove, 631 F. Supp. 2d 226, 239 (E.D.N.Y. 2009) ("Chilling is required to be alleged only in cases where a plaintiff states no harm independent of the chilling of speech.").

Independent concrete injuries include the revocation of a building permit, Dougherty v. Town of N. Hempstead Bd. Of Zoning Appeals, 282 F.3d 83, 91 (2d Cir. 2002), the misapplication of zoning codes, Gagliardi v. Vill. of Pawling, 18 F.3d at 195 (2d Cir. 1994), and intimidation. MacPherson v. Town of Southampton, 2013 WL 1833243, at *5 (E.D.N.Y. May 1, 2013).

Here, plaintiffs' speech was not chilled, but plaintiffs adequately allege independent concrete injuries. First, the December 30, 2016, stop work order is tantamount to a permit revocation, and therefore constitutes a concrete injury. Second, the delay in issuing already approved permits is analogous to revoking a permit and is therefore also a concrete harm. Third, plaintiffs allege misapplication of municipal codes regarding the sidewalk shed and Saturday work permits. Finally, plaintiffs allege repeated visits from Gianatasio, DOB, DPW, and the fire and police departments.

Accordingly, plaintiffs have adequately alleged a First Amendment freedom of association claim.

Plaintiffs also claim defendants retaliated against them in response to plaintiffs' public statements about Mayor Thomas and plaintiffs' failure to apologize for those statements.

Plaintiffs adequately plead this claim.

The parties do not dispute that plaintiffs' statements made to the Westchester County Business Journal are protected and Thomas's alleged statement requiring an apology would be compelled speech in violation of the First Amendment. As above, the Court must still assess whether plaintiffs have plausibly alleged a retaliatory motive and concrete harm.

In addition to the inference of retaliatory motive described for the freedom of association claim, Thomas's alleged statements about the article ("I will investigate the shit out of you guys") create an additional inference that his actions were in retaliation for plaintiffs' exercise of their free speech rights. Moreover, on March 9, 2017, the same day that Thomas allegedly told plaintiffs there would be no forward progress on pending permits until plaintiffs apologized, OSHA officials visited the 203 project, telling plaintiffs' representatives that they had been dispatched by Thomas.

Lastly, plaintiffs plead a concrete harm. The OSHA visit on March 9, 2017, and the continued delay in issuing already approved permits are both concrete harms sufficient to plead an injury.

Accordingly, plaintiffs have adequately alleged their federal and state free speech claims.

IV. Section 1983 Conspiracy Claim

Defendants argue plaintiffs have failed to state the Section 1983 conspiracy claim with the requisite particularity.

The Court agrees.

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). "[C]onclusory, vague, or general

allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." Allen v. Antal, 665 F. App'x 9, 15 (2d Cir. 2016) (quoting Leon v. Murphy, 988 F.2d 303, 311 (2d Cir. 1993)).

Here, plaintiffs fail to plead any agreement between Thomas and Gianatasio. The complaint only asserts, "[Thomas's] office and Gianatasio were involved in the decision to issue the [December 30, 2016] Order." (Compl. ¶ 37). This is not enough under the heightened pleading standard for conspiracy.

V. City of Mount Vernon

Defendants argue plaintiffs' claims against the City of Mount Vernon fail because the City of Mount Vernon is not vicariously liable for the alleged retaliatory acts by Thomas.

The Court agrees.

"Local governments are responsible only for their own illegal acts. They are not vicariously liable under § 1983 for their employees' actions." Connick v. Thompson, 563 U.S. 51, 60 (2011) (internal quotation marks and citations omitted); Gleason v. Scoppetta, 566 F. App'x 65, 70 (2d Cir. 2014). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658, 694 (1978).

Here, plaintiffs fail to identify any official policy or custom of the City of Mount Vernon that led to the alleged retaliation. The mere fact that a mayor performs actions in violation of constitutionally protected rights does not render those actions a policy or custom of the municipal government.

Accordingly, because there is no such alleged policy or custom, the claims against the City of Mount Vernon must be dismissed.

VI.      <u>Administrative Review Claims</u>

Defendants argue this Court does not have subject matter jurisdiction to review the stop work orders issued by the DOB primarily because such review should be commenced through an Article 78 proceeding in New York State Supreme Court.  <u>See</u> N.Y. CPLR § 7803.

Although federal courts do have the power to entertain Article 78 claims through an exercise of supplemental jurisdiction, 28 U.S.C. § 1367(a), here the Court finds the challenged administrative actions are not ripe for review because the actions do not constitute final decisions.  <u>See</u> <u>Reifler v. City of Poughkeepsie, N.Y.</u>, 122 F.3d 1057, 1057 (2d Cir. 1997) (citing <u>Williamson County Regional Planning Comm'n v. Hamilton Bank</u>, 473 U.S. 172, 186 (1985)).  A stop work order is not a final decision.  <u>See</u> <u>Gottlieb v. Village of Irvington</u>, 69 F.Supp.2d 553, 557–58 (S.D.N.Y. 1999).

The cases plaintiffs cite are inapposite because they primarily address review of final determinations under the State Environmental Quality Review Act, N.Y. Envtl. Conserv. Law § 8–0101 <u>et</u> <u>seq</u>, ("SEQRA"), a statute providing processes to review the environmental impact of proposed building plans, which is not relevant here.  <u>See</u> <u>Sprint Spectrum L.P. v. Willoth</u>, 176 F.3d 630, 636 (2d Cir. 1999) (federal jurisdiction to review final SEQRA determination); <u>Westchester Day Sch. v. Village of Mamaroneck</u>, 236 F. Supp. 2d 349, 354–55 (S.D.N.Y. 2002) (federal jurisdiction to review SEQRA determination that was not final because plaintiff adequately pleaded SEQRA futility exception).

Here, there has been no final administrative decision and plaintiffs do not plead the

futility exception.² Accordingly, the sixth and seventh causes of action must be dismissed.

VII.     Qualified Immunity

Mayor Thomas argues in the alternative that he is entitled to qualified immunity.

The Court disagrees.

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). A qualified immunity defense is established where "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998).

During the time period described in the complaint, it was clearly established law that retaliation for protected speech violates the Constitution. Moreover, without the benefit of a fuller factual record, the Court cannot conclude whether Thomas was objectively reasonable to believe his actions did not violate such clearly established law.

Accordingly, dismissal on the basis of qualified immunity is not warranted at this stage.

---

² "Although the precise contours of the futility exception are not well-defined, courts in the Second Circuit have recognized that mere allegations of open hostility are not sufficient to invoke the futility exception. Furthermore, to invoke the futility exception, most courts require the filing of at least one meaningful application. Informal efforts to gain approval for land development are insufficient, by themselves, to constitute final government action." Norwood v. Salvatore, 2015 WL 631960, at *5 (N.D.N.Y. Feb. 13, 2015) (internal citations and quotation marks omitted).

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiffs' claims for conspiracy and as against the City of Mount Vernon are dismissed. Plaintiffs' federal and state retaliation claims against Thomas and Gianatasio under the First Amendment and the New York State Constitution may proceed.

The Clerk is instructed to terminate the motion. (Doc. #13).

Dated: October 26, 2017
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge